**No. 23-1769**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

CAUSAM ENTERPRISES, INC.,
*Appellant*,

v.

INTERNATIONAL TRADE COMMISSION,
*Appellee*,

ECOBEE TECHNOLOGIES ULC, dba ecobee, ITRON, INC., RESIDEO SMART HOMES TECHNOLOGY (TIANJIN), ADEMCO, INC., ALARM.COM HOLDINGS, INC., ALARM.COM INCORPORATED, ENERGYHUB, INC.,
*Intervenors*.

On Appeal from the United States International Trade Commission, Investigation No. 337-TA-1277

**REPLY BRIEF OF**
**CAUSAM ENTERPRISES, INC.**

Christopher C. Campbell
KING & SPALDING LLP
1650 Tysons Boulevard
Suite 400
McLean, VA 22102

Britton F. Davis
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202

Jeffrey M. Telep
*Counsel of Record*
Joshua N. Mitchell
Jonathan Weinberg
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jmitchell@kslaw.com

*Counsel for Appellant*

August 9, 2024

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Appellant certifies the following:

1. The full name of the party represented by me: Causam Enterprises, Inc.

2. The names of the real parties in interest represented by me: N/A.

3. Parent corporations and publicly held companies that own 10% or more of stock in the party: Causam Holdings, LLC.

4. The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

    - Joseph D. Eng, Jr. – King & Spalding LLP
    - Brian Eutermoser – King & Spalding LLP
    - Brian D. Hill – King & Spalding LLP
    - Dara Kurlancheek – King & Spalding LLP
    - Abby L. Parsons – King & Spalding LLP
    - John D. Reohrick – King & Spalding LLP
    - Rahul Sarkar – King & Spalding LLP
    - Peter Sauer – King & Spalding LLP
    - Noah Stid – King & Spalding LLP
    - Katherine Vessels – King & Spalding LLP
    - Matthew Wood – King & Spalding LLP

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   - *Causam Enterprises, Inc. v. Alarm.com, Inc.*, No. 6:21-cv-00751 (W.D. Tex.)
   - *Causam Enterprises, Inc. v. ecobee, Inc.*, No. 6:21-cv-00748 (W.D. Tex.)
   - *Causam Enterprises, Inc. v. Itron, Inc.*, No. 6:21-cv-00750 (W.D. Tex.)
   - *Causam Enterprise, Inc. v. Resideo Technologies, Inc.*, No. 6:21-cv-00749 (W.D. Tex.)
   - *Causam Enterprises, Inc. v. Xylem, Inc.*, No. 6:21-cv-00752 (W.D. Tex.)
   - *ecobee Technologies ULC v. Causam Enterprises, Inc.*, IPR2022-01339 (P.T.A.B.)
   - *Unified Patents, LLC v. Causam Enterprises, Inc.*, IPR2022-00404 (P.T.A.B.)

6. The organizational victims and bankruptcy cases applicable to this appeal: N/A.

Date: August 9, 2024

*/s/ Joshua N. Mitchell*
Joshua N. Mitchell

*Counsel for Appellant*
*Causam Enterprises, Inc.*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Causam has standing .......... 2

II. The inducement issue is irrelevant .......... 8

III. The Commission misconstrued the phrase "measurement and verification data" .......... 10

A. The Commission's requirement of an "*actual* measurement … of the reduction" renders the claim inoperable .......... 12

B. The Commission's constructions are unsupported .......... 14

1. The claim language does not support the Commission's construction .......... 14

2. The specification similarly does not support the Commission's construction .......... 17

3. The extrinsic record does not support the Commission's constructions .......... 20

C. Resideo's thermostats generate "data for measurement and verification," as Causam's construction requires .......... 23

IV. The Commission misconstrued "power control message" .......... 25

A. "at least one of" does not mean "both" .......... 25

1. The Commission failed to support its construction .......... 26

2. The Commission's construction is wrong .......... 27

B. Resideo's demand response messages identify a "controllable device" .......... 29

1. The relays in Resideo's thermostats are "controllable devices" ........ 32

2. Resideo instructs relays to disable the electric power flow to a power consuming device ........ 35

3. Causam has not forfeited or waived arguments ........ 37

CONCLUSION ........ 38

# TABLE OF AUTHORITIES

## Cases

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*,
657 F.3d 1264 (Fed. Cir. 2011)........................................................13

*Apple Inc. v. Corephotonics, Ltd.*,
81 F.4th 1353 (Fed. Cir. 2023)........................................................18

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010)........................................................13

*Beloit Corp. v. Valmet Oy*,
742 F.2d 1421 (Fed. Cir. 1984)........................................................4

Certain Optical Disc Drives,
Components Thereof, & Products Containing the Same,
Inv. No. 337-TA-897 (U.S.I.T.C. Jan. 7, 2015)....................................3

*Corus Grp. PLC v. ITC*,
352 F.3d 1351 (Fed. Cir. 2003)........................................................4

*Ecolab, Inc. v. FMC Corp.*,
569 F.3d 1335 (Fed. Cir. 2009)........................................................14

*Gose v. U.S. Postal Serv.*,
451 F.3d 831 (Fed. Cir. 2006)........................................................24

*IpVenture, Inc. v. Prostar Comput., Inc.*,
503 F.3d 1324 (Fed. Cir. 2007)........................................................8

*Jenkins v. McKeithen*,
395 U.S. 411 (1969)........................................................4

*Kaufman v. Microsoft Corp.*,
34 F.4th 1360 (Fed. Cir. 2022)........................................................28

*Kelly v. United States*,
69 F.4th 887 (Fed. Cir. 2023)........................................................26

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .......... 26

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965 (Fed. Cir. 2018) .......... 13, 14

*Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003) .......... 6, 7

*Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304 (Fed. Cir. 2001) .......... 13

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015) .......... 23

*Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 342 F.3d 1290 (Fed. Cir. 2003) .......... 5, 6

*Willis v. GAO*, 448 F.3d 1341 (Fed. Cir. 2006) .......... 5

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) .......... 6

Merriam-Webster (2024), https://www.merriam-webster.com/dictionary/corresponding .......... 15

## INTRODUCTION

This Court should reject the International Trade Commission's and the Intervenors' attempt to salvage the Commission's flawed decision that Resideo's products do not infringe U.S. Patent No. 10,394,268.

*First*, all parties agree that Causam has standing. They differ only on why. The Commission and Resideo argue that standing is proper because the ownership dispute does not raise a standing concern. Causam takes no position on their contention. If the Court agrees with that argument, then it need not reach the ownership dispute. But if the Court does reach the ownership dispute, it should hold that Causam owns the '268 patent because Resideo has misread the relevant agreements and the Court's binding precedent.

*Second*, the Commission and Resideo seek to define "measurement and verification data" to exclude runtime data. But they cannot even keep their own stories straight about why such a limitation is proper. They start by arguing that the claim language and specification demand the impossible: a *direct measurement*, as opposed to an "estimate," of how much power was hypothetically saved during a demand response event. And when turning to the extrinsic record, they shift to arguing that the

direct measurement must instead be of the power *consumed*—not *saved*—during the event. Neither requirement is supported by the intrinsic record.

*Finally*, the Commission and Resideo cannot defend the Commission's unreasoned conclusion that the demand-response messages received by Resideo's products identify no "controllable device." Because the Commission provided no reasoning in support of that conclusion, the Commission and Resideo invent new reasoning on appeal and attempt to support it with factfindings and reasoning plucked from other parts of the ID, concerning *other* products, other patents, and other claim language.

The Commission's decision should be reversed and the case remanded.

## ARGUMENT

### I. Causam has standing.

All parties agree that Causam has standing to bring this appeal. They differ only on why. Whereas Causam argues that "Causam has standing because it owns the '268 patent" (Causam Br. 18), the Commission and Resideo argue that Causam has standing because the

Commission issued a final determination (Commission Br. 28–30; Intervenors' Br. 50). Causam takes no position on whether that rationale is correct.

Separately, the Commission and Resideo argue that the patent ownership dispute—not decided below—is not before the Court because it is not jurisdictional. Commission Br. 30–34; Intervenors' Br. 50–52. That argument is at odds with the Commission's position in other investigations[1] and with Resideo's position below that the ownership dispute concerned Causam's "standing."[2] Regardless, Causam takes no position on that argument either.

If the Court agrees with Resideo and the Commission that the ownership dispute is non-jurisdictional, it may of course ignore the

[1] Certain Optical Disc Drives, Components Thereof, & Products Containing the Same, Inv. No. 337-TA-897, slip op. at 7 (U.S.I.T.C. Jan. 7, 2015) (opinion remanding the investigation) ("[A]fter Lexmark the focus of a standing analysis still remains centered on patent ownership in light of the language of the Patent Act").

[2] *See* Appx20330 (Resideo arguing below that "Causam … [lacks] full rights in the patents that are in this investigation and, therefore, it lacks standing."); Appx20341 (Resideo arguing below that due to the alleged ownership deficiency, "Causam lacks standing"); Appx4018 ("Motion to Summary Determination that Causam Lacks Sole Ownership of the Asserted Patents and Therefore Lacks Standing.")

ownership dispute and decide the merits. *See Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1423 (Fed. Cir. 1984) (for non-jurisdictional issues, this Court "does not sit to review what the Commission has not decided"). If instead the Court concludes that the ownership dispute *is* jurisdictional, then the Court must resolve that dispute before it can address the merits. *See Corus Grp. PLC v. ITC*, 352 F.3d 1351, 1357 (Fed. Cir. 2003) (if an issue "goes to this Court's jurisdiction[, the Court] must decide the issue even though the court below passed over it without comment" (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969))).

Causam owns the '268 Patent.

***First***, Resideo's contention (at 55 & 58 n.12) that Causam has "forfeited" any ownership argument by failing to raise it below is meritless because (1) Causam did raise the issue and (2) standing is not a waivable issue anyway. To start, Causam argued below that the '268 Patent is not within the scope of the 2007 Assignment. *See* Appx4654; Appx4470–4471 ("The 2007 Assignment … does not apply to the later inventions at issue in this proceeding."). But more fundamentally, if the Court reaches the question of ownership it will be because that question goes to the Court's subject-matter jurisdiction, which is not a waivable

issue. *See Willis v. GAO*, 448 F.3d 1341, 1343–44 (Fed. Cir. 2006) ("Article III standing … can be neither waived, … nor assumed" and this Court must examine the question "even if the issue was not raised by the parties").

***Second***, under this Court's binding precedent, the 2007 Assignment on which Resideo hinges its ownership claim does not reach the '268 patent. *See Univ. of W. Va. Bd. of Trs. v. VanVoorhies*, 342 F.3d 1290, 1295–96 (Fed. Cir. 2003). In *VanVoorhies*, this Court "[c]onstru[ed] … *de novo* as a matter of law" an assignment agreement that uses language materially identical to the 2007 assignment at issue here. *Id*. at 1295; *see* Causam Br. 21–22. That agreement, this Court concluded, covered "only … the exact invention embodied by the '970 application; its reissues or extensions; and its *immediate* lineal descendants." *VanVoorhies*, 342 F.3d at 1295 (emphasis added).

Resideo suggests that the limitation to "immediate lineal descendants" "merely limited the assignment's reach to patents within the same family." Intervenors' Br. at 56. But that argument reads the word "immediate" out of the Court's holding. Immediate descendants are not merely those "within the same family"—those are lineal descendants.

*See Lineal*, Black's Law Dictionary (12th ed. 2024) ("Derived from or relating to common ancestors, esp. in a direct line"). *Immediate* descendants have the additional characteristic of being no more than one generation removed from the parent. *See Immediate*, Black's Law Dictionary ("Not separated by other persons or things"). Because the '268 patent is undisputedly not an *immediate* descendant of the '909 Application, the 2007 Assignment did not reach it. *VanVoorhies*, 342 F.3d at 1295–96.

***Third***, the 2007 Assignment failed to assign the '268 patent because—unlike later agreements between the parties—it *excluded* continuations-in-part from its scope. Causam Br. 22–23.

Resideo (at 56–57) resists this conclusion as well, relying on *Regents of University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003), for the notion that language in the 2007 assignment sufficed to encompass continuations-in-part. But as with *VanVoorhies*, Resideo's reading of *Knight* is incomplete. Resideo ignores that, there, this Court relied on "broad language" in *three different agreements*—"the Patent Policy, the Co-Inventor Agreement, *and* the Joint Assignments." 321 F.3d at 1120 (emphasis added). The Court there did not hold that the assignment

language on which Resideo relies was itself effective in assigning continuations-in-part; instead—relying primarily on *the Patent Policy*—it concluded that those three agreements' broad language "*obligate*[*d*]" the inventors to assign the continuation-in-part applications. *Id.* (emphasis added) (citing two cases imposing obligations to assign under university patent policies). The Joint Assignments, on the other hand, merely "expressly vest[ed] ownership of the *parent applications* in UNM." *Id.* at 1119–20 (emphasis added).

Here, the situation is the opposite: nothing but Resideo's misreading of the 2007 Assignment supports its ownership claim. There is no "broad language" in mutually supporting agreements suggesting an intent to vest Consert with the ownership Resideo now claims. Instead, language in the 2010 and 2013 agreements plainly contradicts Resideo's reading of the 2007 assignment and demonstrates that if the parties had intended to include continuations-in-part in the scope of the Assignment, they would have done so expressly. *See* Causam Br. 22–23.

***Finally***, the 2013 Agreement confirms that Causam and Consert understood that the scope of the 2007 Assignment did not reach the '268 Patent or its siblings. Causam Br. 23–27. Consert paid Mr. Forbes

hundreds of thousands of dollars to license those patents, thus "remov[ing] any uncertainty arising from the language" of the parties' prior agreement. *IpVenture, Inc. v. Prostar Comput., Inc.*, 503 F.3d 1324, 1327 (Fed. Cir. 2007). Resideo's quibbles (at 57–61) about ancillary questions of that agreement's meaning cannot overcome the absence of an effective assignment of rights in those patents to Consert. Because Consert owned no rights in the '268 Patent, the quitclaim deed on which Resideo bases its ownership claim transferred nothing. Causam owns the '268 Patent.

## II. The inducement issue is irrelevant.

Resideo argues that the Court can dispense with this appeal at the outset because "Causam's theory of infringement by Resideo for method claim 1 of the '268 patent concerned only induced infringement, not direct infringement." Intervenors' Br. 1. According to Resideo, Causam has not appealed one of the ALJ's independent bases for rejecting that theory—specifically, the ALJ's finding of no specific intent. Intervenors' Br. 10–12, 25, 29–31.

The Commission does not make this argument. *See* Commission Br. 14–15, 37. That may be because Causam's theory of infringement

was *not* limited to induced infringement. From the outset, Causam has alleged that "Resideo *directly* infringes … at least claims 1-11 … of the '268 patent." Appx461 (emphasis added). In its post-hearing brief, Causam argued that "the Respondents have *directly* infringed the '268 … Patent[]." Appx4110. The brief even included a table identifying Causam's infringement theories on a per-claim basis, and that table listed direct infringement ("liability under [35 U.S.C.] § 271(a)") as a live theory of infringement for claim 1 of the '268 patent:

| Patent | Asserted Claim | Type of Claim | Respondents' Liability Under § 271(a) | Respondents' Liability Under § 271(b) |
|---|---|---|---|---|
| 268 | 1, 2, 6, 7 | Method | using | using |
| | 14, 15, 18 | System | using, offering to sell, selling, importing | using |
| 552 | 19, 23 | Device | using, offering to sell, selling, importing | using |
| 522 | 1 | Method | using | using |
| | 15, 19, 22 | Device | using, offering to sell, selling, importing | using |
| 592 | 13 | System | using | using |

Appx4110 (highlighting added). Resideo's contention (at 1) that Causam preserved only a theory of indirect infringement is wrong.

Causam has appealed the Commission's finding of no direct infringement. The claim construction errors Causam has identified are dispositive on that issue. Consequently, the Court need not address the

Commission's decision on indirect infringement or the specific-intent factfinding unique to it.

## III. The Commission misconstrued the phrase "measurement and verification data."

Causam's position is that "measurement and verification data" ("M&V data") means "data *for* measurement and verification," and that Resideo's thermostats generate such data because they generate "runtime data," which the utility providers use for measurement and verification. Causam Br. 28–33, 36–40.

The Commission's response (at 38–49) is internally inconsistent. Rather than articulate one proposed construction for "measurement and verification data," the Commission oscillates between two different limitations it wants inserted into the "measurement and verification data" term. Neither is correct.

*First*, the Commission argues (at 38) that the claimed M&V data must include actual measurement and verification—not just an "estimate"—of the *reduction* in consumed power. Resideo (at 35) argues the same. But that requirement is impossible to satisfy. The amount of power reduced can only ever be estimated because one of its inputs—the amount of power that *would have been* used but for the demand-response

intervention—is necessarily a hypothetical value. This Court should reject the Commission's construction because it renders the claim impossible to practice and therefore inoperable. Nothing in the record suggests that adopting such a disfavored construction is appropriate here.

*Second*, the Commission silently switches horses midway through its argument and contends it is seeking a different construction: that, rather than an actual measurement "of *the reduction* in consumed power" (at 38), the M&V data must include "an actual measurement of *consumed* power" (at 41). (Emphases added.) Resideo hints at a similar alternative. Intervenors' Br. 32 ("the thermostats do not measure … the actual amounts of power *used or* reduced." (emphasis added)). But while this alternative construction is not an impossibility, it is nevertheless still wrong because nothing in the record requires that "measurement and verification data" always include direct meter measurements of the amount of power consumed. And even if the measurement and verification did require such measurements, other data used for measurement and verification (such as runtime measurements) would still be "measurement and verification data."

### A. The Commission's requirement of an "*actual* measurement … of the reduction" renders the claim inoperable.

The Commission argues that the claimed M&V data must include an "*actual* measurement and verification *of the reduction* in consumed power" "as opposed to merely an estimate." Br. 38 (second emphasis added); *see also id.* at 24 ("this step requires actual measurement of power corresponding to the amount of electric power *reduced*" (emphasis added)); *id.* at 42 (arguing the M&V data must include "an actual measurement of *the reduction* in consumed power" (emphasis added)). Resideo argues the same. *See* Intervenors' Br. 35 ("What matters is that measurement and verification data must correspond to the *actual* reduction in consumed power of the power-consuming device—not a mere estimate of the reduction.").

The Commission's construction is impossible to satisfy, because one cannot take an "actual measurement" of events that never occurred. The proposed construction thus renders the claim inoperable. Any possible measure of the reduction in consumed power is necessarily an estimate: the difference between (1) the amount of power consumed during the demand response event and (2) the amount of power that *would have*

been consumed but for the demand response event. Because the latter input is a description of events that never occurred, it is necessarily an estimate. The difference between that estimate and the amount of power that was actually consumed (whether actually measured or estimated) is therefore itself an estimate. Because "the reduction in consumed power" is always an estimate, it is impossible to satisfy the Commission's requirement that an infringing device must produce an "*actual* measurement … of the reduction in consumed power," "as opposed to merely an estimate." Commission Br. 38.

A claim construction that is impossible to satisfy renders the claim inoperable, and it is therefore "viewed with extreme skepticism." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1278 (Fed. Cir. 2011); *see AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1053 n.1 (Fed. Cir. 2010) (rejecting construction where "the claimed invention would be inoperable if the claims are construed in the manner suggested"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 972 (Fed. Cir. 2018) (rejecting a construction because it "would impermissibly render the claims inoperable"); *see also Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1309–10 (Fed. Cir. 2001) ("A claim interpretation

that would exclude the reasonable practice of the method taught in the patent is rarely the correct interpretation" (quotation marks omitted)).

And "where claim language permits an operable construction, the inoperable construction is wrong." *Power Integrations*, 904 F.3d at 972 (characterizing *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1345 (Fed. Cir. 2009)). Here, Causam has explained that the claim language ("measurement and verification data") permits an operable construction ("data for measurement and verification"). Causam Br. 30 (emphasis omitted). The Commission's inoperable construction is therefore wrong.

### B. The Commission's constructions are unsupported.

The Commission argues that the claim language and intrinsic record support its view that M&V data must include an actual measure of the reduction in power. It then contends that the extrinsic record supports a different construction—that M&V data must include an actual measure of power *used*. It is wrong on all counts.

#### 1. The claim language does not support the Commission's construction.

The Commission's claim construction finds no support in the claim language. As Causam argued (at 30), the plain meaning of "measurement and verification data" is "data *for* measurement and

verification"—just like the plain meaning of "applicant evaluation data" is "data *for* applicant evaluation."

The Commission contends (at 38) that its construction is supported by the broader phrase "measurement and verification data *corresponding to the reduction in consumed power*." (Emphasis added). The Commission argues that, to "'correspond[] to the reduction in consumed power,'" the data must include an "*actual* measurement [of that reduction] as opposed to merely an estimate." *Id.* (emphasis added) (quoting Appx344).

The Commission is wrong. Claim 1 does not recite that the M&V data "*is* the reduction in consumed power"—or even that it is an *estimate* of that reduction. Rather, it recites that the data "correspond[s]" to the reduction in some way. "Corresponding to" merely requires the M&V data to be "related" to the reduction in consumed power,[3] not that it be an actual measurement of that reduction (which, as explained, would be impossible).

---

[3] *Corresponding*, Merriam-Webster (2024), https://www.merriam-webster.com/dictionary/corresponding.

The requirement that the M&V data "correspond" to the reduction in consumed power can accordingly be satisfied in many ways, including by the M&V data being an estimate of that reduction or even by the M&V data being "for" calculating such an estimate (as Causam's construction proposes). Data *for* calculating the reduction in power consumption "correspond[s] to the reduction" like admission essays *for* evaluating a college applicant correspond to the evaluation. Thus, contrary to the Commission's contention, the additional claim language it cites does not suggest that Causam's construction is wrong.

As Causam explained (at 37–40), Resideo's thermostats collect and send runtime data to utilities, and the utilities use that runtime data to estimate the reduction in consumed power. Thus, Resideo's thermostats collect and send "measurement and verification data corresponding to the reduction in consumed energy," as claimed. The Commission is wrong that this expanded claim language imposes the impossible requirement that Resideo's thermostats must further send an "*actual* measurement [of the reduction] as opposed to merely an estimate." Commission Br. 38 (emphasis added).

### 2. The specification similarly does not support the Commission's construction.

The Commission is also wrong that the '268 patent's specification imposes the impossible requirement of taking an "actual measurement" of the reduced power consumption. *See* Commission Br. 38–39.

**a.** The Commission first reasons that the specification imposes that requirement because the patent's "focus" is on "ensuring that the amount of power reduced during a demand response is accurately measured." *Id.* at 38. The Commission argues that effectuating this focus "requires actual measurement as opposed to merely an estimate of the reduction." *Id.*

But the Commission does not explain why "actual measurement" is required to achieve the invention's goals, let alone what legal theory (disclaimer? something else?) would justify imposing that impossible requirement on the claims. While true that the inventor sought to estimate the reduction in consumed power more accurately, it is not true that achieving that goal necessarily "requires actual measurement as opposed to merely an estimate of the reduction." *Id.* Again, "actual measurement" of the reduction is impossible. So, unsurprisingly, the specification discloses no embodiments that perform such an "actual

measurement." Instead, the specification's embodiments *estimate* the reduction, and do so using runtime data—like the runtime data Resideo's thermostats generate. *See* Appx343 (21:42–58) (disclosing that estimating the reduction could include comparing an estimate of the "power that would have been used" to the "amount of time that each controllable device … was turned off").

The Commission's construction is therefore disfavored not only because it would render the claim inoperable, but also because it excludes disclosed embodiments. *See, e.g.*, *Apple Inc. v. Corephotonics, Ltd.*, 81 F.4th 1353, 1359 (Fed. Cir. 2023) (rejecting construction that "would exclude various embodiments disclosed by the specification"). Indeed, the Commission's construction excludes *every* disclosed embodiment.

**b.** The Commission next cites the specification's disclosure that "[e]mbodiments of the present invention monitor and calculate precisely how many kilowatts (or carbon credits) are being generated or saved per customer, instead of merely providing an estimate." Commission Br. 38–39 (citing Appx335 (6:24–27)). But a skilled artisan would not understand that disclosure to disclaim all embodiments that estimate the power "saved" (rather than measure it directly) because direct reduction

measurement is impossible, and consequently appears in no disclosed embodiments.

In context, the relevant artisan would understand that the disclosure cited by the Commission merely disparages the rudimentary estimates provided by the prior art's "one-way" demand-response systems described in the specification's background. *See* Appx333 (1:43–2:21); *see also* Appx20351–20372 (trial testimony of Mr. Forbes about the invention). As the specification explains, traditional one-way systems used "blanket command[s]" to turn loads on or off, but they received no feedback, so "the actual load shed is approximate." Appx333 (1:49–55, 2:12–21). As Mr. Forbes testified, these one-way systems "did do some level of estimation, but … it was very rudimentary." Appx20352; *see also* Appx20367 ("Estimation, from the perspective of one-way devices, were not an accurate way for you to get paid"); Appx20368–20369 (discussing ineffective estimation by one-way systems).

The '268 patent introduced a "two-way" system, in which the estimates could be improved with real-time feedback from the load-management devices. Appx20353; *see also* Appx333 (1:56–62) ("no

techniques exist for calculating power consumption … under the control of a two-way positive control load management device”).

Given this background and disclosure, a skilled artisan would have understood that the specification’s reference to not “merely providing an estimate” not as an attempt to require the impossible measurement of the reduction, but instead, as a declaration that the invention improves upon the rudimentary estimates of the prior art one-way systems described in the background, which received no M&V data of any kind from the controlled devices. A two-way system that receives some type of M&V data—like runtimes—improves upon those one-way systems.

Thus, nothing in the specification suggests that the runtime data sent by Resideo’s thermostats for the purpose of measurement and verification is *not* “measurement and verification data.”

#### 3. The extrinsic record does not support the Commission’s constructions.

When analyzing the extrinsic record, the Commission makes an unsignaled shift to a different construction. Rather than proffer testimony in support of its primary construction (that M&V data must include “actual measurement as opposed to merely an estimate of the reduction in consumed power”), the Commission instead contends that

the extrinsic record supports a construction that the M&V data must include a measurement of the *consumed* power. *See* Commission Br. 41. Resideo hints at a similar alternative. Intervenors' Br. 32 ("the thermostats do not measure … the actual amounts of power *used or* reduced." (emphasis added)).

The Commission does not identify anything in the claim language or the intrinsic record that would support this second construction. Instead, the Commission cites only the testimony of Mr. Forbes and various experts—but it misreads that testimony. And the Commission further fails to explain what relevance unqualified legal opinions from fact witnesses might have to this Court's *de novo* review.

*First*, the Commission argues that Mr. Forbes testified that M&V data must always include actual measurements of consumed power. Commission Br. 39. He did not. To the contrary, Mr. Forbes clearly and repeatedly testified that M&V data can be *runtime data*.

Mr. Forbes testified that, for any given utility, the permissible methodology for "[m]easurement and verification … will be dependent upon the governing entity" and that the governing entity can "allow you to use methods that include estimation based upon runtime data."

Appx20358 (62:8–11); Appx20367 (71:2–7); *see also* Appx20356 (60:24–25) ("Runtime data could be used to determine [the reduction in power consumption]"); Appx20357 (61:15–21) ("measurement can be in the form of … a runtime data measurement"); Appx20364 (68:20–22) ("[To calculate the reduction in energy consumption] I would use … runtime information.").

The Commission cites a single sentence where it argues that Mr. Forbes agreed that M&V data must include power measurements (*e.g.*, from a meter). Commission Br. 39 (citing Appx20357–20358 (61:22–62:3)). But the Commission fails to consider that quotation in its proper context. Before the cited testimony, Mr. Forbes was asked whether "measurement and verification" requires "an accurate power measurement." Appx20357 (61:15–17). He answered that some kind of "measurement" is necessary, but that it need not be "an actual KW measurement"—that instead, it could be "a runtime data measurement" or "a duty cycle measurement." Appx20357 (61:18–21). In the very next question (the one on which the Commission relies), Mr. Forbes was asked "*with respect to power*"—*i.e.*, "an actual KW measurement"—whether *that* measurement would be "taken from a meter or from a submeter or

from a device that is capable of performing measurement." Appx20357 (61:22–25) (emphasis added). He agreed that such "actual KW measurement[s]" would come from the meter. But that testimony is not agreement that *all* M&V data *must* include actual power measurements—Mr. Forbes had just finished saying the opposite.

*Second*, the Commission cites (at 39–40) the witness statements and deposition testimony of several experts, but it spends little effort explaining the significance of anything those experts say. To whatever extent these fact witnesses might have opined on the proper construction of "measurement and verification data," the Court should disregard their opinions as unqualified legal opinions by fact witnesses. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015) ("Experts may be examined to explain terms of art, and the state of the art, at any given time, but they cannot be used to prove the proper or legal construction of any instrument of writing." (cleaned up)).

### C. Resideo's thermostats generate "data for measurement and verification," as Causam's construction requires.

The Commission argues that "even if the Court agrees with Causam's proposed construction," it should not reverse the non-infringement finding because "Resideo's thermostats themselves do not

even generate runtime data." Commission Br. 47. Instead, the Commission argues, the thermostats generate "relay status information" that is "used … to infer when an HVAC appliance was turned on and off." *Id.* at 48–49. The Court should reject this argument for two independent reasons.

*First*, the Commission's argument is contrary to its own findings below. The CALJ found expressly that the evidence "shows … that Resideo calculates runtime data." Appx79. The Commission adopted that finding. Appx260. The Commission cannot take a contrary position on appeal. *See Gose v. U.S. Postal Serv.*, 451 F.3d 831, 839 n.4 (Fed. Cir. 2006) ("Agency action must be sustained, if at all, on the actual grounds relied on by the agency."). And even if it could, it would have to show that the CALJ's finding was unsupported by substantial evidence. The Commission has not even attempted to make that showing.

*Second*, even if Resideo's thermostats generate and report only on/off data, they would still infringe. According to the Commission, the on/off data is used for generating runtime data, which is used for measurement and verification. Consequently, the on/off data is "for measurement and verification," as Causam's construction requires.

## IV. The Commission misconstrued "power control message."

The Commission's non-analysis of the term "power control message"—which neither the Commission nor Resideo defends—requires remand.

Resideo, using reasoning the Commission never adopted, attempts to defend the Commission's reading of "at least one of" to mean "both," but its argument is both procedurally improper and wrong. The Commission and Resideo then try and fail to explain why the relays in Resideo's thermostats are not "controllable devices," within the meaning of the claims, or why the power-control messages received by Resideo's devices do not instruct those relays to disable power.

### A. "at least one of" does not mean "both."

Causam contends (at 42–48) that the Commission's construction of "at least one of" to mean "both" (1) cannot be affirmed on procedural grounds because it is unsupported by any reasoning and (2) should moreover be reversed on substantive grounds because it is wrong.

The only challenge to these arguments comes from Resideo, and that challenge is limited to the substantive ground. Because Causam's procedural argument is unchallenged, the Court cannot affirm the

Commission's construction. Moreover, because Resideo's substantive arguments are wrong, the Court should reverse.

**1. The Commission failed to support its construction.**

Neither the Commission nor Resideo disputes that the Commission failed to provide any reasoning to support its construction of the "at least one of" phrase. *See* Commission Br. 49–56; Intervenors' Br. 42–45. Nor does either party provide any argument excusing that failure. Consequently, the Court cannot affirm the Commission's construction. *See Kelly v. United States*, 69 F.4th 887, 895 (Fed. Cir. 2023) (Court "may not supply a reasoned basis for the agency's action that the agency itself has not given" (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

The Commission's failure to support its construction is no mere technicality. In his domestic-industry analysis, the CALJ agreed with Causam that the claim requires *either* (1) an amount of electric power to be reduced *or* (2) "at least one controllable device." Causam Br. 43. But in his non-infringement opinion, the CALJ took the opposite view, *without explanation*. *Id.* Causam raised this issue in its petition for

Commission review (Appx4433–4435), but the Commission rejected Causam's argument, *also without explanation*. Appx259–260.

This was error because the Commission failed to explain why it took the action it did. Because the Court may not supply a reasoned basis for the agency's action that the agency itself has not given, the Court cannot affirm the Commission's construction.

**2. The Commission's construction is wrong.**

The Commission does not try to defend its construction of the "at least one of" phrase. Resideo does, but by necessity, it advances only new arguments never articulated by the Commission below. If the Court reaches those new arguments, it should reject them because they are substantively wrong.

*First*, Resideo argues that the thermostat must receive *both* (1) an amount of power to reduce *and* (2) identification of a controllable device to shut off because, otherwise, the claim would encompass a supposedly absurd embodiment: one where a utility instructs the client device to reduce energy consumption by a given amount without also identifying which controllable devices should be used to achieve that reduction. Intervenors' Br. 43. But Resideo fails to explain what is problematic

about such an embodiment. The embodiment simply contemplates that the utility lets the client device decide how to achieve the desired reduction. Resideo identifies nothing in the record suggesting that the utility must always dictate which controllable devices the client device will use.

*Second*, Resideo argues that this Court's decision in *SuperGuide* means that, the phrase "at least one of [A] and [B]" always means at least one item from each of those categories. Intervenors' Br. 44. But Causam has explained that *SuperGuide* does not stand for that proposition—that instead, it calls for interpreting "at least one of [A] and [B]" *in light of the specification*. Causam Br. 46–48; *see also* Appx4106–07. And where, as here, the specification discloses no embodiments that include *both* [A] and [B], "at least one of [A] and [B]" means choosing at least *one* of those two. Causam Br. 46–48; *see also Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372–73 (Fed. Cir. 2022) (construing "and" to mean "and/or" because doing otherwise would read out the sole embodiment disclosed in the specification).

*Finally*, Resideo argues that the "at least one of" language should be ignored because it is an "artifact of claims from related patents."

Intervenors' Br. 44–45. The Court should disregard this argument because it was not pressed below, not relied upon by the Commission, nor developed sufficiently on appeal to enable a response. Resideo does not cite the prosecution history on which it purports to rely. Nor does it identify that prosecution history anywhere in the appellate record. Because Resideo's argument does not enable a response or permit appellate adjudication, the Court should ignore it.

In sum, neither the Commission nor Resideo even attempts to justify the Commission's failure to provide any reasoning in support of its construction of "at least one of," and the new substantive arguments Resideo introduces to fill that void are both wrong and inadequate.

### B. Resideo's demand response messages identify a "controllable device."

Causam has argued (at 48–50) that the demand-response messages addressed to and received by Resideo's thermostats (the claimed "client device") are "power control messages" that implicitly identify the relays within those thermostats, which are "controllable devices," within the meaning of claim 1.

This is another issue on which the CALJ agreed with Causam before he disagreed: he ruled in his DI determination that demand-

response messages addressed to a thermostat suffice to identify a "controllable device"—"particularly, the relay therein." Appx149–150. Yet, for his non-infringement analysis, the CALJ reversed course without explanation. Appx74. Causam petitioned the Commission to review this discrepancy, (Appx4435–4437), but the Commission adopted the non-infringement analysis without explanation. Appx259–260.

On appeal (at 48–54), Causam advances two arguments: the Commission decision (1) cannot be affirmed on procedural grounds because it is unsupported by evidence or reasoning, and (2) should be reversed on substantive grounds because it is wrong.

The Commission and Resideo argue that the Commission's decision is "supported by substantial evidence," which indicates they consider the issue a fact dispute over infringement rather than a legal dispute over claim construction. Commission Br. 49–56; Intervenors' Br. 47–49.

But because the Commission cited no such evidence in its infringement analysis of the Resideo product (Appx74), the Commission's and Resideo's appellate arguments rely exclusively on findings cobbled together from *other* portions of the ID, related to other accused products, other patents, and other claims—principally the CALJ's non-

infringement analysis of the Itron product at Appx94–95. Commission Br. 54; Intervenors' Br. 48; *see also* Commission Br. 54 (relying on Appx80-81, which analyzes the phrase "configured in network communication" in the '592 patent). That approach is both procedurally improper and substantively wrong.

*First*, the Commission cannot retroactively correct its failure to cite evidence or provide reasoning to support its non-infringement analysis respecting the Resideo product by later identifying what evidence or reasoning it *could have* cited. The Commission must defend its action on the grounds it articulated, and it articulated none for why Resideo's demand response messages are not "power control messages," as claimed. Consequently, at least remand on this issue is appropriate.

*Second*, the arguments advanced by the Commission and Resideo are substantively wrong because (1) the relays in Resideo's thermostats *are* "controllable devices" within the meaning of claim 1, (2) the relays are instructed to disable power to a power-consuming device, and (3) Causam preserved these arguments.

### 1. The relays in Resideo's thermostats are "controllable devices."

The Commission and Resideo argue that Causam's infringement theory fails because "a relay within Resideo's thermostat cannot be a 'controllable device,'" as Causam's infringement theory requires. Commission Br. 53; *see also* Intervenors' Br. 47–48. They reason that a "controllable device," as that phrase is used in the patent, means a device that is (1) "separate" from the "client device" (in some unstated sense), and (2) "capable of IP communication." Commission Br. 53–54; Intervenors' Br. 48. The Commission and Resideo argue that Resideo's relays do not satisfy either requirement.

As a threshold matter, whether the phrase "controllable device" as used in the '268 patent encompasses Resideo's relays is a legal issue of claim construction, not a fact issue of infringement (as the Commission and Resideo appear to believe). *De novo* review applies.

The Commission and Resideo are wrong because the intrinsic record does not impose on the claimed "controllable device" either of the two limitations proposed. And even if it did, affirmance would still be improper because the Commission did not find that Resideo's thermostats fail to satisfy those requirements. In fact, the Commission

expressly found that at least some of Resideo's relays *are* physically separate from the thermostats. Appx69.

*First*, the Commission and Resideo argue that the "controllable device" must be "separate" from the "client device" (in some way) because it would be "absurd[]" for the client device to "issue a power management command" to a "controllable device" that is within the "client device." Commission Br. 54; *see also* Intervenors' Br. 48. But there is nothing absurd about a device issuing commands to its subcomponents. To the contrary, subcomponents of computing devices routinely issue commands to one another. *E.g.*, Appx341 (18:37–40) (contemplating commands from the UCC command processor or the ALC manager to the master event manager, all of which are within the ALD server). The Commission cites no findings or evidence to the contrary. Thus, nothing prevents the claimed "controllable device" from being housed inside the "client device."

*Second*, the Commission and Resideo argue that the "controllable device" must be "capable of IP communication" because the patent specification "touts the benefits of each device having its own IP address." Commission Br. 54–55; *see also* Intervenors' Br. 48. But the portions of the specification they cite do not support that position. Instead, they

simply disclose embodiments where a "controllable device" is IP-addressable. *See* Appx339 (13:60–14:4); Appx335 (5:49–60); Appx337 (10:25–28). Neither the Commission nor Resideo attempts to explain how that disclosure results in the disclaimer, disavowal, or other foreclosure of embodiments where the "controllable device" communicates using a protocol other than IP. The specification contains no disparagement of other communication protocols and provides nothing that might lead a skilled artisan to believe that *only* the IP protocol can fulfill the purpose of the invention. Thus, there is no requirement that the "controllable device" must be capable of IP communication. *See* Appx4105 (arguing that IP communications is not required).

*Finally*, even if the Commission and Resideo were correct that the "controllable device" must be "separate" from the "client device" or capable of IP communication, that would not be a basis for affirmance because the Commission did not find that Resideo's thermostats fail to satisfy those limitations. In fact, the Commission found expressly that, in some of Resideo's products, the relays *are* physically separate from the thermostats. Appx69. The Commission and Resideo mistakenly cite the Commission's contrary findings regarding *Itron's* accused product.

Appx94–95. That is why the ID cites the separateness requirement as a non-infringement basis *for the Itron products* (Appx94–95), but *not* for the Resideo products (Appx74).

In sum, Resideo's relays can be the claimed "controllable devices."

#### 2. Resideo instructs relays to disable the electric power flow to a power consuming device.

The Commission (but not Resideo) also argues that, "even if a relay can be a 'controllable device,' Resideo's thermostats do not instruct the relay 'to disable the electric power flow' to a 'power consuming device,' such as an HVAC, as required by claim 1." Commission Br. 55. But once again, that argument is both procedurally improper and substantively wrong.

The Commission's argument is procedurally improper because the Commission never reasoned below that *Resideo's* thermostats fail to issue the recited instruction. Appx74. On appeal, the Commission cites its analysis of the *Alarm.com* thermostat, which the Commission ruled does not "disable the electric power flow" to HVAC equipment (because it merely "deactivates" the equipment by turning it off). Commission Br. 55 (citing Appx109). But the Commission did not cite that reasoning as its basis for holding that *Resideo's* thermostats do not infringe. Had it done

so, Causam would have disputed the reasoning in its opening brief. Once again, the Commission advances a basis for non-infringement that it says it *could have* relied on below but did not. That is procedurally improper.

The reasoning is also wrong because nothing in the intrinsic record suggests that the claimed "disabl[ing]" of the electric power flow to the power-consuming device excludes the act of turning the power-consuming device off. The Commission found expressly that Resideo's "relays … turn[] on and off aspects of the HVAC system." Appx69. Even if *turning an electrically-powered device off* were not literally the same as disabling the electric flow to it, the Commission would have still had to review whether the two options were substantially the same under the doctrine of equivalents—another task it did not undertake below. And even if they were not the same, the claims do not require disabling the electric flow to a power-consuming device—only instructing a controllable device to do so.

Causam would have briefed these issues in its opening brief had the Commission actually relied on the positions it advances now. It did not.

### 3. Causam has not forfeited or waived arguments.

Resideo (but not the Commission), argues that Causam forfeited the argument that the demand-response messages addressed to Resideo's thermostats are implicitly addressed to the thermostat's relays. Intervenors' Br. 48. That is wrong. In its Petition for Commission Review, Causam argued that the Commission's infringement analysis should conform with the CALJ's DI determination, which ruled that "the load control switch [i.e., the analog for Resideo's thermostats]—*or more particularly, the relay therein*—is instructed to disable the electric power flow to power consuming devices, such as water heaters, pool pumps, and the like." Appx4436 (quoting Appx149).

Causam further argued in that section of the petition that the Commission should adopt the CALJ's position from the DI analysis "that the Domestic Industry Products infringed under the doctrine of equivalents." Appx4436. Consequently, the Commission and Resideo are wrong that "Causam did not raise any doctrine-of-equivalents theory in its petition for Commission review, thus forfeiting it." Intervenors' Br. 49; Commission Br. 56.

## CONCLUSION

The Court should hold that Causam has standing, vacate the Commission's decision on infringement, and remand for resolution of the remaining issues.

Respectfully submitted,


*/s/Joshua N. Mitchell*

Jeffrey M. Telep
*Counsel of Record*
Joshua N. Mitchell
Jonathan Weinberg
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jmitchell@kslaw.com

Christopher C. Campbell
KING & SPALDING LLP
1650 Tysons Boulevard
Suite 400
McLean, VA 22102

Britton F. Davis
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202

*Counsel for Appellant*


August 9, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Appellant certifies that this brief:

(i) complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 6,861 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(ii) complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word 365 ProPlus and is set in 14-point Century Schoolbook font.

Date: August 9, 2024

*/s/Joshua N. Mitchell*
Joshua N. Mitchell