# United States Court of Appeals for the Federal Circuit

---

**CAUSAM ENTERPRISES, INC.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**ECOBEE TECHNOLOGIES ULC, DBA ECOBEE, ITRON, INC., RESIDEO SMART HOMES TECHNOLOGY (TIANJIN), ADEMCO, INC., ALARM.COM HOLDINGS, INC., ALARM.COM INCORPORATED, ENERGYHUB, INC.,**
*Intervenors*

---

2023-1769

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1277.

---

Decided: October 15, 2025

---

JONATHAN WEINBERG, King & Spalding LLP, Washington, DC, argued for appellant. Also represented by JEFFREY MARK TELEP; CHRISTOPHER CHARLES CAMPBELL, Cahill Gordon & Reindel LLP, Washington, DC.

PANYIN HUGHES, Office of the General Counsel, United

States International Trade Commission, Washington, DC, argued for appellee. Also represented by CATHY CHEN, MICHELLE W. KLANCNIK.

KIRK T. BRADLEY, Alston & Bird LLP, Charlotte, NC, argued for intervenors Itron, Inc., Resideo Smart Homes Technology (Tianjin), Ademco, Inc. Also represented by LAUREN NICOLE GRIFFIN, SCOTT BENJAMIN PLEUNE, MATTHEW S. STEVENS.

MANNY CAIXEIRO, Venable LLP, Los Angeles, CA, for intervenor ecobee Technologies ULC. Also represented by MEGAN S. WOODWORTH, Washington, DC; STEVEN M. LUBEZNY, Law Office of Edward H Rice, LLC, Northbrook, IL.

KEITH HUMMEL, Cravath, Swaine & Moore LLP, New York, NY, for intervenors Alarm.com Holdings, Inc., Alarm.com Incorporated, EnergyHub, Inc. Also represented by SHARONMOYEE GOSWAMI.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Causam Enterprises, Inc. (Causam), previously named Causam Energy, Inc., owns several patents related to electrical utilities' ability to reduce demand for power in response to conditions calling for a reduction, such as high systemic demand in relation to available supply—so-called "demand response" functionality. Causam filed a complaint before the International Trade Commission (ITC or Commission) alleging, as relevant now, that Resideo Smart Homes Technology (Tianjin) and its domestic affiliate Ademco, Inc. (collectively, Resideo) were violating section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, by importing and selling certain internet-connected "smart" thermostats whose operation infringes method claim 1 of

U.S. Patent No. 10,394,268 (issued August 27, 2019, on Application No. 15/618,981, filed June 9, 2017)—which Causam asserts it owns. Causam also named other respondents, including ecobee, Inc., now known as ecobee Technologies, ULC (ecobee), and their imported products (which are not at issue in this appeal). Causam sought exclusion of the accused products.

The Commission instituted an investigation in response to Causam's complaint. *See Certain Smart Thermostats, Load Control Switches, and Components Thereof*, Inv. No. 337-TA-1277, 2022 WL 17730771, at *2 (Nov. 16, 2022) (*Initial Determination*); J.A. 23. During the investigation, as relevant here, respondents contended that Causam did not own the '268 patent, and Resideo contended that its smart thermostats did not infringe the asserted claims of the patent. *Initial Determination*, at *14–20, *33–38; J.A. 39–48, 72–80. The assigned administrative law judge, after trial, agreed with both those contentions and denied relief under section 337. *Initial Determination*, at *14–20, *33–38; J.A. 39–48, 72–80. The full Commission, on review, adopted the noninfringement finding, while taking no position on the issue of ownership. *Certain Smart Thermostats, Load Control Switches, And Components Thereof*, Inv. No. 337-TA-1277, 2023 WL 2136484, at *1–3 (Feb. 16, 2023) (*Commission Determination*); J.A. 258–60. Causam has appealed the noninfringement determination only as to claim 1 and only as to Resideo's products.

Even before the Initial Determination was rendered, the '268 patent was challenged in the Patent and Trademark Office (PTO) through a petition for an inter partes review (IPR) under 35 U.S.C. §§ 311–19, and after the ITC's decision, the PTO's Patent Trial and Appeal Board (the Board) instituted the requested review and then held that all challenged claims (all but claim 12) were unpatentable. *See ecobee Technologies ULC v. Causam Enterprises, Inc.*, No. IPR2022-01339 (P.T.A.B. Mar. 19, 2024). Causam

appealed the Board's final written decision, and today we affirm that decision. *See Causam Enterprises, Inc. v. ecobee Technologies ULC*, No. 24-1958, slip op. at 2, ––– F.4th –––, ––– (Fed. Cir. Oct. 15, 2025) (*Causam v. ecobee*).

In the present matter, Causam asks us to hold that it owns the '268 patent, arguing that ownership is a threshold question because, if Causam is not the patent owner, it lacks the injury in fact necessary for it to have Article III standing in this court. We agree with Causam and hold that it owns the '268 patent. Although Causam also challenges the Commission's noninfringement determination, we do not reach that issue. In the *Causam v. ecobee* case, we today affirm the Board's holding that claim 1 is unpatentable. That holding moots the noninfringement issue in the present appeal, which we therefore dismiss.

## I

The ancestry of the '268 patent is relevant to the ownership issue before us. The '268 patent issued from Application No. 15/618,981, which is a continuation of a continuation of Application No. 13/463,761. '268 patent, col. 1, lines 8–14; *see* 35 U.S.C. § 120; Manual of Patent Examining Procedure (MPEP) § 201.07 ("Continuation Application"). In turn, the '761 application was a continuation-in-part of a continuation of a division of Application No. 11/895,909 (filed August 28, 2007). '268 patent, col. 1, lines 14–22; *see* 35 U.S.C. § 121 ("Divisional applications"); MPEP § 201.06 ("Divisional Application"); MPEP § 201.08 ("Continuation-in-Part Application"). The key point is that a continuation-in-part is in the line of descent from the '909 application to the '268 patent.

### A

Causam is listed—under its previous name, Causam Energy, Inc.—as the owner of the '268 patent, by assignment from inventor Joseph Forbes, on the front page of the patent and in the PTO records. J.A. 40001; *see Initial*

*Determination*, at *16 ("On January 18, 2018, Causam Energy, Inc., was renamed Causam Enterprises, Inc., the complainant in this investigation."). The July 2017 assignment document filed for the June 2017 Application No. 15/618,981 (which issued as the '268 patent) says that the assignment was executed on September 16, 2014. J.A. 40000–01 (ITC Joint Exhibit JX-0009.1–0009.2). That is the date of the assignment to Causam of the '981 application's immediate parent, Application No. 14/456,306, an assignment that covers "continuations in whole or part." *Certain Smart Thermostats, Load Control Switches, and Components Thereof*, Inv. No. 337-TA-1277, EDIS No. 786215, at JX-0009.3–0009.4.

Earlier, on August 24, 2007, Mr. Forbes had assigned the '909 application (filed August 28, 2007), an ancestor of the '268 patent, to another entity, America Connect, Inc. J.A. 21594–96. The 2007 assignment transferred ownership of the "[i]nvention" of the '909 application and "all patents which may be granted therefor" and "all *divisions, reissues, continuations and extensions thereof*." J.A. 21595 (emphasis added); *see* Intervenors' Response Br. at 53 (quoting provision). Importantly, the 2007 assignment does not list "continuations-in-part."

Around 2009, Consert, Inc., of which Mr. Forbes was both a co-founder and an employee, succeeded to America Connect's interest in the '909 application. J.A. 22319. In 2010, Mr. Forbes executed an agreement with Consert, assigning to Consert rights in inventions he had developed or would develop as its employee. J.A. 21762–73.

Shortly afterward, a dispute about ownership of intellectual property arose between Mr. Forbes and Consert. J.A. 22329. The parties resolved that dispute in 2013 with a settlement that superseded the 2010 employment agreement. J.A. 21880–90. Under the 2013 settlement, Mr. Forbes assigned to Consert various patents and patent applications (termed "Consert Patents"). Causam Opening

Br. at 9; J.A. 21885. That settlement expressly excluded certain patents ("Excluded Patents") from the scope of the assignment, and among the excluded patents were some descendants of the ’909 application. Causam Opening Br. at 9; J.A. 21885. The Consert Patents included the ’909 application itself, while its descendant continuation-in-part, the ’761 application, was an excluded patent. J.A. 21881, 21883. Consert paid Mr. Forbes for a license to practice the excluded patents, but it did not assign any rights *to* Mr. Forbes. *See* J.A. 21885–86. The agreement declared that no rights were being granted except as stated. J.A. 21886.

The ’268 patent issued in 2019. Causam filed its ITC complaint on July 28, 2021, alleging that Resideo and other importers infringed the ’268 patent and several other Causam demand-response patents in violation of section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337. J.A. 379, 424–62; *see* Causam Opening Br. at 11.

B

Section 337 directs the Commission to investigate allegations of importation of "articles that . . . infringe a valid and enforceable United States patent," 19 U.S.C. § 1337(a)(1)(B), (b), and, upon finding such infringement and a specified domestic industry, to exclude the relevant articles from entering the country, *see id.* § 1337(a)(2), (c)–(d). Here, the Commission instituted an investigation on September 2, 2021, in response to Causam's complaint, *Initial Determination* at *2; J.A. 23, and the matter was tried to Chief Administrative Law Judge (CALJ) Cheney, *Initial Determination*, at *3; J.A. 25.

On November 16, 2022, CALJ Cheney issued an Initial Determination, holding, as relevant here, that (1) Causam did not own the four asserted patents and thus did not have statutory standing (*i.e.*, a statutory right of action) to bring the complaint, *Initial Determination*, at *20; J.A. 48, and (2) Resideo did not infringe the asserted claims, *Initial*

*Determination*, at *31–40, J.A. 67–83. Relevant here, the CALJ's holding that Causam did not own the '268 patent rested on his interpretation of the 2007 assignment, which he determined assigned "all progeny" of the '909 application to America Connect, a formulation the CALJ viewed as covering the '268 patent when Mr. Forbes later attempted to assign it to Causam. *Initial Determination*, at *16; J.A. 42–43. The CALJ found no infringement after determining that multiple claim limitations were not met by Resideo's accused thermostats. *Initial Determination*, at *33–38; J.A. 72–80. Those determinations sufficed to conclude that no violation of section 337 was present.

Causam asked the full Commission to review the initial determination, and on February 16, 2023, the Commission rendered its decision. *Commission Determination*, at *1–3; J.A. 258–60. It adopted only the CALJ's noninfringement finding, declining to adopt the holding that Causam did not own the '268 patent. *Commission Determination*, at *1–3; J.A. 258–60. Causam timely appealed the Commission's determination to this court under 19 U.S.C. § 1337(c). Resideo and other respondents before the Commission, including ecobee, intervened in the appeal.

After the Commission's decision, the PTO's Board instituted a review of all claims (but claim 12) of the '268 patent—as requested in the IPR petition filed before the CALJ decision—and then held all challenged claims to be unpatentable, including claim 1, which is the sole subject of Causam's appeal in the present matter. *See ecobee v. Causam*, No. IPR2022-01339, at 2 (P.T.A.B. Mar. 19, 2024) (noting institution date of March 9, 2023). We treated the two appeals as companion cases and heard argument in them the same day. Today, we affirm the Board's decision. *See Causam v. ecobee*, slip op. at 2, ––– F.4th at –––.

We have statutory jurisdiction over Causam's appeal under 28 U.S.C. § 1295(a)(6) and 19 U.S.C. § 1337(c). This

case presents two jurisdictional questions: first, whether Causam has Article III standing, and, second, whether our decision today in *ecobee* moots all issues on appeal here.

II

A

We first address Causam's Article III standing to bring this appeal to this court. As we have explained today in *Causam v. ecobee*, slip op. at 5–7, ––– F.4th at –––, Causam, as the "party invoking federal jurisdiction[,] bears the burden of establishing [the] elements" of Article III standing to bring its case in federal court—namely, injury in fact, traceability to the challenged conduct, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). What suffices to establish standing, as with other issues, varies with the stage of the litigation: Pleadings that, taken as true, plausibly allege standing suffice to overcome a motion to dismiss for lack of jurisdiction, while evidence—specifically, of the required injury in fact—is required at later stages such as summary judgment or judgment after trial. *See Causam v. ecobee*, slip op. at 5–7, ––– F.4th at ––– (discussing, *e.g.*, *Lujan* and *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1170–73 (Fed. Cir. 2017)).[1]

---

[1] *See*, *e.g.*, *Incyte Corp. v. Sun Pharmaceutical Industries, Inc.*, 136 F.4th 1096, 1101–02 (Fed. Cir. 2025) (finding absence of injury in fact where unsuccessful IPR challenger did not demonstrate substantial risk of infringement); *Allgenesis Biotherapeutics Inc. v. Cloudbreak Therapeutics, LLC*, 85 F.4th 1377, 1380–81 (Fed. Cir. 2023) (same); *JTEKT Corp. v. GKN Automotive Ltd.*, 898 F.3d 1217, 1219–21 (Fed. Cir. 2018) (same); *Meenaxi Enterprise, Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1072 n.2 (Fed. Cir. 2022) (stating requirement that appellant from Trademark

Here, the only interest of Causam's assertedly injured is its interest as owner of the '268 patent; Causam does not claim an interest in reversing the Commission's denial of section 337 relief if it is not the patent owner. *See* Causam Opening Br. at 18. And the present appeal comes to this court after development of a full evidentiary record on ownership and a determination on the issue by the CALJ (but not by the Commission). *Initial Determination*, at *14–20; J.A. 39–48. That ownership issue, moreover, as noted *infra*, does not involve disputes about facts, but reduces to a legal question of contract interpretation. A standard tied to evidence, not mere assertion, therefore applies.

The Commission and Intervenors (Respondents before the agency) argue that we need not decide the ownership question because Causam's mere assertion of ownership satisfies the injury-in-fact requirement, so that there is no need to consider evidence on the issue. Commission's Response Br. at 30–34; Intervenors' Response Br. at 49–52. In support, they rely on two of our recent decisions: *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1234–35 (Fed. Cir. 2019), and *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020). Those cases are inapposite. *Lone Star*, unlike this case, involved an appeal from a district court of a motion to dismiss, and we straightforwardly applied *Lujan* when we said, "[*a*]*t the pleading stage*, 'general factual allegations'" may establish standing. 925 F.3d at 1234 (quoting *Lujan*, 504 U.S. at 561) (emphasis added). And similarly, in *Schwendimann*, although we said that allegations sufficed to establish standing, we were referring

---

Trial and Appeal Board have Article III standing); *Brooklyn Brewery Corp. v. Brooklyn Brew Shop*, 17 F.4th 129, 139–140 (Fed. Cir. 2021) (finding absence of standing where trademark cancellation petitioner did not demonstrate participation in relevant market).

to a party's contention that the failure of the district court to dismiss the action for lack of standing was erroneous. *See* 959 F.3d at 1070–71.

The Commission also argues that Causam has constitutional standing simply because it has a statutory right to appeal an adverse decision. *See* Commission's Response Br. at 31 (citing 19 U.S.C. § 1337(c)). That contention lacks merit. Although "Congress may elevate harms that exist in the real world . . . to actionable legal status, it may not simply enact an injury into existence." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (internal quotation marks and citation omitted); *see also Consumer Watchdog v. Wisconsin Alumni Research Foundation*, 753 F.3d 1258, 1262 (Fed. Cir. 2014) (stating that Congress's creation of a statutory right of appeal "does not simply override the requirement of injury in fact"). We have often found lack of constitutional standing despite statutory authority for appeal. *See supra* at p.8 n.1 (citing cases). Thus, Causam requires evidence showing its ownership of the '268 patent to meet the Article III standing requirement.

Long ago, we stated: "[T]his court does not sit to review what the Commission has not decided." *Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1423 (Fed. Cir. 1984). On that basis, the Commission suggests that we must ignore ownership entirely because the Commission did not take a position on whether Causam owns the '268 patent. Commission's Response Br. at 35–36. We reject that suggestion. *Beloit* does not reach so far as to preclude our consideration of evidence in the record that is relevant to Article III standing, a matter we are duty-bound to consider, just because the Commission (which is not bound by Article III) did not make a finding about the evidence. And we need not decide whether we would defer to factual findings made in an initial determination that are relevant to standing but were not adopted by the Commission, because there is no dispute of fact here—only a legal issue of contract interpretation.

B

We conclude that Causam has established ownership (hence Article III standing) based on the evidence in the record of the agency proceeding itself (with no need, as there sometimes is, for new evidentiary submissions made on appeal). Causam and Intervenors agree that the three Forbes agreements—the 2007 assignment, the 2010 employment agreement, and the 2013 settlement—determine whether Causam owns the '268 patent. *See* Causam Opening Br. at 18–27; Intervenors' Response Br. at 52–61. The Commission, for its part, has declined to address the merits of the ownership issue. *See* Commission's Response Br. at 35–37. Ownership turns, then, on a purely legal question of contract interpretation. *See Textron Defense Systems v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998). No party before us suggests that any differences in state law matter here, so we rely on general principles of contract law.

"Contract interpretation begins with the language of the written agreement." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). "[T]he plain and unambiguous meaning of a written agreement controls." *Hercules, Inc. v. United States*, 292 F.3d 1378, 1380–81 (Fed. Cir. 2002) (quoting *Craft Machine Works, Inc. v. United States*, 926 F.2d 1110, 1113 (Fed. Cir. 1991)). "Further, we cannot insert words into the contract that the parties never agreed to." *Anchorage v. United States*, 123 F.4th 1315, 1320 (Fed. Cir. 2024) (citing *George Hyman Construction Co. v. United States*, 832 F.2d 574, 581 (Fed. Cir. 1987)).

The issue of ownership boils down to the effect of the 2007 assignment. If that assignment (to America Connect, predecessor of Consert) covered the later '761 continuation-in-part application (filed in 2012), then Mr. Forbes did not own that application at the time he assigned it and its continuations (like the '268 patent) to Causam in 2014. And if the 2007 assignment did not cover the '761 application,

then the 2014 assignment establishes Causam's ownership of the '268 patent. *See* J.A. 40001.

Notably, the 2010 employment agreement between Mr. Forbes and Consert (successor to America Connect) has no operative effect on ownership, as it was expressly superseded by the Forbes-Consert 2013 settlement. J.A. 21888. The 2013 settlement, for its part, did not transfer any rights (back) from Consert *to* Mr. Forbes, so if he had already lost rights in the '761 application, he did not regain them by the 2013 settlement. Conversely, if Mr. Forbes owned the '761 application in 2013, the 2013 settlement did not affect his rights because that application was "[e]xcluded." J.A. 21883.

Under the operative language of the 2007 assignment, the crux of the matter is whether to interpret the assignment of the "[i]nvention" of the '909 application and "all divisions, reissues, continuations and extensions thereof" to include the '761 continuation-in-part application. J.A. 21595. We agree with Causam that the answer is no—so that Mr. Forbes retained ownership of the '761 application and could assign it to Causam in 2014.

As an initial matter, we do not agree with Causam about one argument it makes for that conclusion. Causam contends that we interpreted a similar assignment in *University of West Virginia v. VanVoorhies* to exclude "second generation" applications and reasons that the 2007 assignment therefore reaches only the children of the '909 application (not grandchildren or further descendants). *See* 342 F.3d 1290, 1295 (Fed. Cir. 2003); Causam Opening Br. at 21–22. That is a misreading of *VanVoorhies*. The quoted language from *VanVoorhies* must be understood as using the term "second generation" not as describing the number of filing steps in the chain from the primary application, but as referring to different stages of development of the underlying technology. *See VanVoorhies*, 342 F.3d at 1294–96; *id.*, VanVoorhies Opening Br., No. 02-1533 (Fed.

Cir. Apr. 28, 2003), 2003 WL 24018589, at *8–9. After all, the three cited "second generation" patents (U.S. Patent Nos. 6,218,998, 6,239,760, and 6,320,550) do not even refer in their "related application" paragraphs (identifying priority-affecting predecessors) to U.S. Patent Application 07/992,970, which was the primary application defining the scope of the assignment at issue. *VanVoorhies* is thus inapposite.

But we agree with Causam that the omission of "continuations-in-part" from the coverage of the 2007 assignment at issue here is decisive. We reject Intervenors' contention that the word "continuations" in the assignment should be read to include continuations-in-part. Intervenors' Response Br. at 53. Adopting Intervenors' position would amount to "insert[ing] words into the contract that the parties never agreed to," *Anchorage*, 123 F.4th at 1320, because continuations and continuations-in-part are so widely understood to be different. The difference is reflected in the separate treatment of the two in the MPEP—currently, as well as in the version in effect before the 2007 assignment, and since the original edition was published in 1948. *See* MPEP §§ 201.07, 201.08 (current); *see also* MPEP §§ 201.07, 201.08 (8th ed., Rev. 5, Aug. 2006); MPEP §§ 4-1-7, -8, -11 (1948). The two types of descendant applications are practically and legally distinct, in a way relevant to assignment. Importantly for inventors assigning rights, a continuation may not add any new matter to the parent application, while a continuation-in-part does include new matter, and need only repeat a "substantial portion" of the parent. MPEP § 201.08; *see id.* § 201.07–08. An inventor might well wish to assign away continuations of an invention and keep the rights to continuations-in-part (and the included new matter). The distinction also has legal consequences for assignments: For a continuation, recordation of assignment of the parent is effective as to the child, while the same is not true of a continuation-in-part. *See* MPEP § 306. Knowing that, an assignee might wish to

contract with respect to continuations-in-part differently or separately from continuations. Intervenors' interpretation is unreasonable in disregarding the familiar and significant distinctions between a term used and one not used in the 2007 assignment.

Alternatively, Intervenors urge us to extend the reasoning of *Regents of University of New Mexico v. Knight* to hold that the assignment of an *invention* encompasses continuations-in-part. 321 F.3d 1111, 1119–20 (Fed. Cir. 2003); *see* Intervenors' Response Br. at 56–57. We do not think the suggested extension is warranted. In *Knight*, we held that an assignment of an invention and certain types of descendants reached continuations-in-part even though the assignment mentioned only "continuations." 321 F.3d at 1119–20. Critically, however, there were two additional relevant agreements involving identical parties. *Id.* at 1118–20. It was the combination of all three agreements, and their "broad language," that we held to be "sufficient to obligate" the inventors to assign "*all* related patents and applications, including [continuation-in-part] applications," with respect to certain inventions. *Id* at 1120 (emphasis in original). Although the 2007 assignment in this case, like the one in *Knight*, has an "[i]nvention" as its object, J.A. 21595, there is no evidence here that we ought to read "invention" as expansively as we did in *Knight*. And in the absence of such evidence, the proper interpretation is one that respects rather than overrides important distinctions in familiar terminology.

For those reasons, we conclude that the 2007 assignment unambiguously excludes the '761 application, a continuation-in-part of the '909 application. The 2007 assignment did not affect Mr. Forbes's rights in the '761 application nor, by extension, the '268 patent (a continuation of a continuation of the '761 application). Mr. Forbes had good title to the '268 patent when he assigned it to Causam, and Causam therefore owns the patent. Thus, Causam has carried its burden to show Article III standing.

## III

Although we conclude that Causam has standing, we may not exercise jurisdiction if this case is moot. "If a judgment has become moot while awaiting review, [the c]ourt may not consider its merits[.]" *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 21–22 (1994) (alterations in original removed) (quoting *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 677 (1944)). There is "no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks and citation omitted). "A case remains live '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation' . . . ." *MOAC Mall Holdings, LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (alteration in original) (quoting *Chafin*, 568 U.S. at 172). This appeal is moot if Causam has no right to relief under section 337 of the Tariff Act of 1930. *See Texas Instruments, Inc. v. International Trade Commission*, 851 F.2d 342, 343–44 (Fed. Cir. 1988) (finding mootness where expiration of a patent deprived the Commission of power to enter an exclusion order); *see also*, *e.g.*, *Hyosung TNS Inc. v. International Trade Commission*, 926 F.3d 1353, 1358–59 (Fed. Cir. 2019) (finding mootness in similar circumstances, even when there was co-pending litigation).

In *Causam v. ecobee*, we today affirm the Patent Trial and Appeals Board's holding that claim 1 of the '268 patent is unpatentable for obviousness. *See Causam v. ecobee*, slip op. at 2, ––– F.4th at –––. Causam has no right to an exclusion order because section 337 requires infringement of a "valid and enforceable" patent, but claim 1, the only claim asserted on appeal, is not patentable. 19 U.S.C. § 1337(a)(1)(B). Although there is co-pending litigation, *see* Causam Opening Br. at viii, that is not a sufficient interest to keep the case alive, *see Hyosung*, 925 F.3d at 1358–59 (collecting cases). Causam concedes that affirmance in

*Causam v. ecobee* moots all issues here. Oral Arg. at 5:00–23, available at https://www.cafc.uscourts.gov/oral-arguments/2317 6909032025.mp3. We conclude that our decision in *Causam v. ecobee* deprives Causam of a legally cognizable interest in reversal. We therefore dismiss this appeal as moot.

IV

The appeal from the Commission's decision is dismissed.

The parties shall bear their own costs.

**DISMISSED**